UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**LORETHA FRANKLIN,**

    **Plaintiff,**

    v.                                     **Case No. 8:10-CV-02004-T-23AEP**

**MANATEE COUNTY SCHOOL BOARD,**

    **Defendant.**

_____ /

## REPORT AND RECOMMENDATION

Before the Court is Defendant Manatee County School Board's (the "School Board") Motion for Summary Judgment (Dkt. No. 19). In response, Plaintiff Loretha Franklin's ("Ms. Franklin") filed a Memorandum in Opposition to Defendant's Motion for Summary Judgment (Dkt. No. 28). The School Board claims that no genuine issue of material fact exists as to Ms. Franklin's claims of failure to promote based on race (Count 1), failure to promote based on age (Count 2), constructive discharge based on race (Count 3), constructive discharge based on age (Count 4), and retaliation (Count 5). Therefore, the School Board submits that it is entitled to summary judgment in its favor on all counts of Ms. Franklin's Complaint. For the reasons set forth below, the Court recommends that the School Board's Motion for Summary Judgment (Dkt. No. 19) be granted.

# I. BACKGROUND

Ms. Franklin, an African-American female, was employed by the School Board in April 1997 as an accounting manager. (Dkt. No. 1 at 2.) In that position, she was responsible for supervising accounting clerks, ensuring that proper and timely payments were made to vendors, assisting in the administration, supervision, and review of the accounting system, and assisting in the preparation of the annual financial reports. (Dkt. No. 20[1] at 6-8.) Ms. Franklin reported directly to the School Board's executive finance director, James G. Drake ("Mr. Drake"). (Dkt. No. 23[2] at ¶ 3.)

In January 2009, the School Board promoted Mr. Drake to the position of assistant superintendent for business services. (Dkt. No. 21[3] at 8.) Following this promotion, the executive finance director position remained vacant for a number of months. (Dkt. No. 21 at 8.) In an effort to reduce costs, the superintendent made several changes to the finance department. (Dkt. No. 21 at 9.) Specifically, the superintendent recommended that the School Board downgrade the executive finance director position in order to save $11,991.00. (Dkt. No. 23 Ex. A.) In May 2009, the School Board adopted a number of changes regarding the job's requirements, including:

- Changing the job title from "executive finance director" to "finance director";

---

[1] Ms. Franklin's deposition was taken on May 13, 2011 and is located at Dkt. No. 20.

[2] Mr. Drake's affidavit was taken on July 28, 2011 and is located at Dkt. No. 23.

[3] Mr. Drake's deposition was taken on May 20, 2011 and is located at Dkt. No. 21.

- Eliminating the requirement of a Masters Degree and requiring instead a Bachelors Degree in accounting, finance, or business administration;
- Eliminating the requirement of eight years of successful experience in educational administration; and
- Eliminating a number of the positions that the finance director is responsible for supervising, including the finance manager, capital projects accountant, position control accountant, and junior accountant.

(Dkt. No. 22[4] Ex. A at 1-8.) In addition, the superintendent modified the distribution of work within the finance department by revising job descriptions for the finance manager and accounting manager positions. (Dkt. No. 21 at 20-21.)

In June 2009, the School Board decided to fill the position of finance director, to which Ms. Franklin applied. (Dkt. No. 20 at 36-37.) Along with five other applicants, Ms. Franklin was interviewed for the position by a panel of five School Board employees, including Mr. Drake. (Dkt. No. 23 at ¶ 7.) Following the interviews, Mr. Drake determined that Angela Fraser ("Ms. Fraser") was the best candidate for the position and the School Board named Ms. Fraser to the position of finance director. (Dkt. No. 23 at ¶ 10.) In her position as finance director, Ms. Fraser became the immediate supervisor of Ms. Franklin and a payroll manager, Rita Zazzaro ("Ms. Zazzaro"). (Dkt. No. 22 at 50.)

On July 28-29, 2009, the School Board held its annual district leadership symposium, at which attendance was made mandatory by the superintendent for all managers, directors, and

---

[4] In 2007, Angela Fraser was hired by the School Board for the job of finance manager. Ms. Fraser's deposition was taken on May 20, 2011 and is located at Dkt. No. 22.

3

administrators. (Dkt. No. 20 at 14-15.) Prior to the symposium, Ms. Franklin informed Ms. Fraser that she would be arriving late on the first day due to a previously scheduled appointment. (Dkt. No. 20 at 55-56.) Ms. Franklin did not attend the first day of the symposium due to illness. (Dkt. No. 20 at 17-18.) Ms. Franklin also did not attend the second day of the symposium, because she had to process "an emergency check for the Board." (Dkt. No. 20 at 18.)

On July 30, 2009, Ms. Fraser met with Ms. Franklin to discuss why she had not attended the leadership symposium, but was able to come into work on the second day. (Dkt. No. 20 at 14.) At some point in the conversation, the word "prejudiced" or "racist" came up, and moving forward, Ms. Fraser decided that whenever she needed to discuss performance or disciplinary actions with Ms. Franklin, she would have a witness present in the meetings. (Dkt. No. 22 at 34-37.)

On August 4, 2009, Darcy Hopko ("Ms. Hopko"), a human resources director, met with Ms. Franklin and Ms. Fraser to discuss a number of Ms. Franklin's concerns, including her not having proper files to do her work and her alleged unfair and discriminatory treatment by Ms. Fraser and Mr. Drake. (Dkt. No. 20 at 65-66.) Ms. Hopko inquired as to whether Ms. Franklin would be able to continue working with Ms. Fraser after the "promotional disagreement," to which Ms. Franklin assured Ms. Hopko that she "would not have a problem" working with Ms. Fraser. (Dkt. No. 20 at 65-66; Dkt. No. 19 Ex. 2[5] No. 3.)

Over the next several months, Ms. Fraser noted a number of problems with Ms. Franklin's work performance, including a lack of attention to detail, errors in her work, and

---

[5] Ms. Franklin's Responses to Interrogatories were provided on March 14, 2011 and are located at Dkt. No. 19 Ex. 2.

problems with timeliness. (Dkt. No. 22 at 43.) Ms. Fraser discussed these concerns with Mr. Drake, who advised her that she needed to specifically address them with Ms. Franklin. (Dkt. No. 21 at 28.) In mid-March 2010, Ms. Fraser met with Becky Wells ("Ms. Wells"), a human resources director, to discuss Ms. Fraser's issues with Ms. Franklin's work performance. (Dkt. No. 19 Ex. 2 No. 3.)

On April 5, 2010, Ms. Franklin was absent from work on sick leave due to "problems with [her] foot." (Dkt. No. 20 at 93.) According to Ms. Franklin, Dr. Darrell Moore, her podiatrist, instructed her to rest because she "couldn't walk on [her] feet ...." (Dkt. No. 20 at 95.) On April 20, 2010, the human resources department sent Ms. Franklin a letter directing her "to submit to a fitness for duty examination pursuant to School Board rule 6.11 ... to determine [her] fitness for duty with the Manatee County School District." (Dkt. No. 20 Ex. 2.) Ms. Franklin stated that when she received the letter, she "knew that [it] was another form of harassment from [Ms. Fraser]." (Dkt. No. 19 Ex. 2 No. 8.) Further, according to Ms. Franklin, the letter "confirmed that the environment was hostile," since it was "not something you send to a dedicated trusted Manager of 13 years." (Dkt. No. 19 Ex. 2 No. 8.) On April 23, 2010, Ms. Franklin gave notice to the School Board that she was retiring from her position as accounting manager, effective April 30, 2010. (Dkt. No. 20 Ex. 3.) Following her announcement, human resources informed Ms. Franklin that she no longer needed to have the physical examination. (Dkt. No. 20 at 97.)

On June 8, 2010, Ms. Franklin filed a complaint with the School Board alleging that Ms. Fraser and Mr. Drake "created a plan to force [her] out of the district through discrimination and

harassment." (Dkt. No. 20 Ex. 5.) In her complaint, Ms. Franklin alleged that Mr. Drake's and Ms. Fraser's actions caused her to take an early retirement. (Dkt. No. 20 Ex. 5.)

On September 10, 2010, Ms. Franklin filed a Complaint in this Court against the School Board, alleging claims based on Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act (the "ADEA"), and the Florida Civil Rights Act (the "FCRA"), "to redress discrimination with respect to Plaintiff's failure to be promoted to the position of Director of Finance and Plaintiff's subsequent constructive discharge from employment arising from a deliberate course of action on the part of the Defendant to enlarge Plaintiff's duties and wage a campaign of harassment." (Dkt. No. 1 at 1.) Specifically, Ms. Franklin asserts one count of failure to promote based on race in violation of Title VII of the Civil Rights Act of 1964 and the FCRA (Count 1), one count of failure to promote based on age in violation of the ADEA and the FCRA (Count 2), one count of constructive discharge based on race in violation of Title VII of the Civil Rights Act of 1964 and the FCRA (Count 3), one count of constructive discharge based on age in violation of the ADEA and the FCRA (Count 4), and one count of retaliation (Count 5). (Dkt. No. 1 at 3-5.)

## II. STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). An issue is "material" only if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). An issue is "genuine" only if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *Id*. In reviewing the motion, the Court must view the

evidence and all factual inferences in a light most favorable to the non-moving party, and all reasonable doubts about the facts are resolved in favor of the non-movant. *Dadeland Depot, Inc. v. St. Paul Fire and Marine Ins. Co.*, 483 F.3d 1265, 1268 (11th Cir. 2007) (citations omitted).

When a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 323.

## III. DISCUSSION

### A. Failure to Promote Based on Race and/or Age in Violation of Title VII of the Civil Rights Act of 1964, the ADEA, and the FCRA (Counts 1 and 2)

Title VII of the Civil Rights Act of 1964[6] makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A claim of race and age discrimination may be established either through direct or circumstantial evidence. *See Wilson*

---

[6] As stated earlier, Ms. Franklin also brings her claims under the FCRA. (Dkt. No. 1 at 1.) The Eleventh Circuit has held that when a plaintiff simultaneously brings discrimination claims based on both Florida and federal law, since Florida's Civil Rights Act is patterned after Title VII, the Court shall apply federal case law dealing with Title VII as applicable to employment discrimination claims brought under Florida law. *See Maniccia v. Brown*, 171 F.3d 1364, 1368 n.2 (11th Cir. 1999); *Florida Dep't of Community Affairs v. Bryant*, 586 So.2d 1205, 1209 (Fla. 1st DCA 1991).

7

*v. B/E Aerospace, Inc.*, 376 F.3d 1079 (11th Cir. 2004). The Eleventh Circuit has described direct evidence as, "evidence, which if believed, proves existence of a fact in issue without inference or presumption. Evidence that only suggests discrimination, or that is subject to more than one interpretation, does not constitute direct evidence." *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189 (11th Cir. 1997). "Only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of [race or age] ... constitute direct evidence of discrimination." *Bass v. Board of County Comm'rs.*, 256 F.3d 1095, 1105 (11th Cir. 2001). "The standard for offering evidence of discriminatory intent is a stringent one, and only the most blatant comments will serve to prove such intent." *Early v. Championship Int'l Corp.*, 907 F.2d 1077, 1081-1082 (11th Cir. 1990).

In the instant case, there is no allegation of direct evidence of discrimination by the School Board on the basis of the Plaintiff's age or race. Where there is no direct evidence of discrimination, the Supreme Court in *McDonnell Douglas v. Green* has created a framework for Title VII discrimination cases based on circumstantial evidence.[7] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, a plaintiff must first establish a prima facie case of discrimination. *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d

---

[7] Ms. Franklin also claims age discrimination on the basis of an alleged violation of the ADEA. (Dkt. No. 1 at 3.) The Eleventh Circuit has noted that "[t]he language of the ADEA closely parallels that of Title VII ... In fact, the sections forbidding discrimination are almost identical. *Compare* 29 U.S.C. § 623(a)(1) (ADEA) with 42 U.S.C. § 2000e-2(a)(1) (Title VII)." *See Adams v. Florida Power Corp.*, 255 F.3d 1322, 1324 (11th Cir. 2001). Thus, the Eleventh Circuit has adopted the *McDonnell Douglas* framework for analyzing both Title VII and ADEA claims. *See Cleveland v. Secretary of Treasury*, 407 Fed.Appx. 386, 387 (11th Cir. 2011) ("We evaluate ADEA age-discrimination claims that are based on circumstantial evidence under the *McDonnell Douglas* burden-shifting framework. We also analyze Title VII retaliation cases under the *McDonnell Douglas* framework.") (citations omitted).

668 (1973). To establish a prima facie case of discrimination under Title VII, a plaintiff must show that "(1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) he was ... treated less favorably than a similarly-situated individual outside his protected class." *Williamson v. Adventist Health System/Sunbelt, Inc.,* 372 Fed.Appx. 936, 940 (11th Cir. 2010) (citing *Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dep't of Educ.*, 342 F.3d 1281, 1289 (11th Cir.2003)). Once the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions. *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

If a defendant satisfies its burden of articulating a legitimate, non-discriminatory reason for the challenged employment action, the burden of production shifts back to the plaintiff to present "significantly probative evidence that the proffered reason is pretext for discrimination." *Carter v. City of Miami*, 870 F.2d 578 (11th Cir. 1989). Specifically, the plaintiff must offer evidence "demonstrat[ing] that the proffered reason[s] w[ere] not the true reason[s] for the employment decision[s]." *Combs v. Plantation Patterns*, 106 F. 3d 1519, 1528 (11th Cir. 1997). "[P]retext is a lie, specifically a phony reason." *Brown v. Sybase, Inc.*, 287 F. Supp. 2d 1330, 1340 (S.D. Fla. 2003). The Plaintiff may establish pretext by showing "that the reason[s] w[ere] false, and that the discrimination was the real reason." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515 (1993).

Here, for summary judgment purposes, the School Board does not contest that Ms. Franklin can establish a prima facie case for age and race discrimination under the *McDonnell Douglas* framework. Instead, the School Board argues that Ms. Franklin "cannot prevail on her

9

claims as the School Board had a legitimate and non-discriminatory reason for the selection of [Ms.] Fraser and [Ms. Franklin] cannot meet her burden of proving pretext." (Dkt. No. 19 at 10.) Specifically, the School Board states that a panel of five individuals was formed to conduct interviews for the finance director position. (Dkt. No. 19 at 4.) The panel "consisted of [Mr.] Drake, Darcy Hopko ("Hopko"), assistant superintendent of district support, Ed Daugherty, chief internal auditor, Todd Henson, director of maintenance and operations, and Tim Kolbe, director of elementary schools." (Dkt. No. 19 at 4.) The School Board notes that:

> The panel rated each applicant on past experience, work performance, knowledge, and skills. (Drake Aff. ¶ 8). The panel asked the same questions of each applicant, which focused in part on (1) prior working experience with payroll, accounts payable, and financial reporting, (2) multi-tasking and ability to work under specific deadlines, (3) ability to give presentations, (4) ability to provide leadership and direction, (5) conflict resolution, and (6) experience with the administration of the issuance of debt. (Id.). Each member of the interview panel completed a form, making notes of the answers given by the interviewee, and then giving a rating of 0 to 5 based on the interviewee's responses. (Drake, 6, Aff. ¶ 9). After the ratings were assigned by each member of the interview panel, the ratings were compiled and the candidates ranked in order of their scores. (Drake Aff. ¶ 9). [Ms.] Fraser, finance manager, scored the highest with an average score of 46.6. (Id.). [Ms.] Franklin ranked fifth with an average score of 39.6. (Id.). No member of the interview panel scored [Ms.] Franklin higher than [Ms.] Fraser. (Id.). Based on the rankings, [Mr.] Drake determined that [Ms.] Fraser was the best candidate for the position. (Drake Aff. ¶ 10).

(Dkt. No. 19 at 4.) Thus, the sole issue for the Court in deciding whether summary judgment should be granted on the issue of age and/or race discrimination is whether the reasons articulated by the School Board for promoting Ms. Fraser were pretext for discrimination.

In order to demonstrate pretext at the summary judgment level, Ms. Franklin must put forth evidence to show that the School Board had "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [its] proffered legitimate reasons for its action

10

that a reasonable fact finder could find them unworthy of credence." *See Porter v. American Cast Iron Pipe Co.*, Case No. 10-14017, 2011 WL 1990667 at *1 (11th Cir. May 23, 2011) (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir.1997)). Here, Ms. Franklin argues that "[t]here are significant facts in dispute regarding pretext to foreclose summary judgment as a matter of law." (Dkt. No. 28 at 17.) Specifically, Ms. Franklin notes that she "had a better education, better experience, more knowledge of school finance and was a far better candidate than [Ms.] Fraser who was promoted on the basis of race and youth." (Dkt. No. 28 at 17.) Further, she "believe[d], Jim Drake awarded the position to Angela Fraser because she was a younger white female ...." (Dkt. No. 19 Ex. 2 No. 8.) While Ms. Franklin may believe that she was a "far better candidate than [Ms] Fraser," and thus she must have been "promoted on the basis of race and youth," the relevant inquiry into pretext "centers upon the employer's beliefs, and not the employee's own perceptions of [her] performance." *See Templeton v. Bessemer*, 154 Fed.Appx. 759, 763 (11th Cir. 2005) (citing *Holifield v. Reno*, 115 F.3d 1555, 1565 (11th Cir. 1997)). In that context, Ms. Franklin fails to provide sufficient evidence that the School Board's actions were motivated by the her age or race.

When asked at her deposition if Mr. Drake did anything to her on account of her race or age, Ms. Franklin responded that:

> He would always give me the impression that – I didn't matter, in other words. It – if we were in a staff meeting, he would talk to the other white girls and ask them how this is doing. And then he would come to me eventually, and he would just ask me how my group was doing and, you know, what's going on, and I talked to him about it.

(Dkt. No. 20 at 12.) In addition, when asked if Mr. Drake ever did anything to lead Ms. Franklin to believe that he was prejudiced against her because of her race or age, Ms. Franklin responded

11

that, "Just his general – his general personality toward me, his communication. There wasn't much communication. He didn't laugh and talk with me like the others. He – our relationship was just strictly professional." (Dkt. No. 20 at 65.) By her own words, evidence of a work relationship that was "strictly professional" does not satisfy Ms. Franklin's burden of establishing pretext for Mr. Drake's seemingly legitimate, non-discriminatory employment decision. Further, while Ms. Franklin points out that "[r]elative to [Ms.] Fraser, [she] had 15 additional years of government accounting experience before the promotion decision was made by [Mr.] Drake," it is not the job of the Court to re-weigh the School Board's business decisions where both applicants had a requisite level of qualifications as stated in the job description. *See Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) (noting that federal courts do not sit "as a super-personnel department that reexamines an entity's business decisions...."). Ms. Franklin has put forth no evidence aside from her personal allegations against the School Board to suggest that the five interview panel-members, all of whom rated Ms. Fraser higher than Ms. Franklin for the position of finance director, used various performance metrics[8] as a mask for their actual discriminatory objectives. *See Denney v. City of Albany*, 247 F.3d 1172, 1185 (11th Cir. 2001) ("[A]bsent evidence that subjective hiring criteria were used as a mask for discrimination, the fact that an employer based a hiring or promotion decision on purely subjective criteria will rarely, if ever, prove pretext under Title VII or other federal employment discrimination statutes."). Thus, since Ms. Franklin has failed to demonstrate "such weaknesses,

---

[8] These metrics included (1) prior working experience with payroll, accounts payable, and financial reporting, (2) multi-tasking and ability to work under specific deadlines, (3) ability to give presentations, (4) ability to provide leadership and direction, (5) conflict resolution, and (6) experience with the administration of the issuance of debt. (Dkt. No. 23 at ¶ 8.)

implausibilities, inconsistencies, incoherencies, or contradictions in [the School Board's] proffered legitimate reasons for its action," the Court finds that no reasonable fact finder could conclude that the School Board's legitimate reasons were pretext for discrimination. *Porter v. American Cast Iron Pipe Co.*, Case No. 10-14017, 2011 WL 1990667 at *1 (11th Cir. May 23, 2011) (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir.1997)) the Therefore, the Court recommends that summary judgment be granted in favor of the School Board as to Ms. Franklin's race and age discrimination claims in violation of Title VII of the Civil Rights Act of 1964, the ADEA, and the FCRA (Counts 1 and 2).

### B. Constructive Discharge Based on Race and/or Age in Violation of Title VII of the Civil Rights Act of 1964, the ADEA, and the FCRA (Counts 3 and 4)

In order for a plaintiff to demonstrate that she was constructively discharged because of her age or race, she must show that "the work environment and conditions of employment were so unbearable that a reasonable person in that person's position would be compelled to resign." *Johnson v. Woodruff*, 28 F.Supp.2d 1248, 1250 (M.D. Fla. 1998) (citing *Virgo v. Riviera Beach Assoc., Ltd.*, 30 F.3d 1350, 1363 (11th Cir. 1994)); *see Bryant v. Jones*, 575 F.3d 1281, 1298 (11th Cir. 2009) ("Constructive discharge occurs when an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job.") (citations omitted). A prima facie case of constructive discharge is established if one may reasonably infer discrimination from the un-rebutted facts. *Johnson v. Woodruff*, 28 F.Supp.2d 1248, 1250 (M.D. Fla. 1998) (citing *Castle v. Sangamo Weston, Inc.*, 837 F.2d 1550, 1559 (11th Cir. 1988)).

In this case, Ms. Franklin retired after enduring a "massive work load from July 2009 through April 2010." (Dkt. No. 28 at 12.) Ms. Franklin alleges that she "was subjected to demeaning and insulting conduct and ongoing scrutiny by the HR department." (Dkt. No. 28 at

13

12.)  According to Ms. Franklin, "[Ms.] Fraser and [Mr.] Drake treated [her] as a problem to get rid of and strategically decided to have HR monitor their communications with [her]."  (Dkt. No. 28 at 12.)  She "wasn't given the proper tools, meaning programs and files, to get [her] job done properly."  (Dkt. No. 20 at 8.)  Due to this increased workload and harassment, Ms. Franklin claims that she "had no choice" but to retire.  (Dkt. No. 20 at 9.)

In support of her response to the School Board's motion for summary judgment, Ms. Franklin cites to the case *Flood v. Alabama Dep't of Indus. Rels.*, 948 F.Supp. 1535 (M.D. Ala. 1996), in which "the district court denied summary judgment in a constructive discharge case and held that the jury can consider the duration of the allegedly difficult conditions, and the amount of extra work the employee was allegedly required to perform."  (Dkt. No. 28 at 11.)  Certainly, changes in work load and working conditions are relevant when deciding a claim for constructive discharge.  However, in *Flood*, there was a significant amount of additional evidence of abuse that the court considered in denying summary judgment.  For instance, in *Flood*, the plaintiff claimed that he was physically threatened by supervisors.  *Flood v. Alabama Dep't of Indus. Rels.*, 948 F.Supp. 1535, 1545 (M.D. Ala. 1996).  He described one supervisor warning him that "it is hard to do anything when [you're] floating at the bottom of the Alabama River with a rock tied to your leg."  *Id*.  Another supervisor allegedly called him a "son of a bitch."  *Id*.  Further, one supervisor allegedly subjected him to an extensive and intrusive, albeit undeserved, background check, which involved obtaining confidential information and inquiring about the plaintiff's parents.  *Id*.  Ms. Franklin does not provide evidence, let alone allege, that she was harassed at a level that even approaches the abuse described in *Flood*.  Instead, she describes an environment in which she was chastised for "things that were so insignificant," including missing a mandatory

14

symposium and arriving late to meetings, and her work load increased. (Dkt. No. 19 Ex. 2 No. 8.) Nevertheless, and much more significantly, Ms. Franklin does not put forth any evidence to support her claim that she was constructively discharged "*based on age*" or "*based on race*" as she alleges in her Complaint. *See Fitz v. Pugmire Lincoln-Mercury, Inc.*, 348 F.3d 974, 977 (11th Cir.2003) ("A constructive discharge occurs when a discriminatory employer imposes" intolerable working conditions). As stated earlier, Ms. Franklin has not shown, other than by making personal accusations, that the School Board possessed discriminatory animus towards her. *See Sauvage v. Snow*, 413 F.Supp.2d 1289, 1305 (M.D. Fla. 2005) ("Moreover, the plaintiff's failure to prove intentional discrimination defeats his claim of a constructive discharge. Liability for a constructive discharge obviously depends upon a showing of intentional discrimination."). Having failed to demonstrate a level of harassment that a reasonable jury could find as "unbearable," and having failed to prove discriminatory intent, the Court recommends that summary judgment be granted in favor of the School Board as to Ms. Franklin's claims for constructive discharge based on race and/or age in violation of Title VII of the Civil Rights Act of 1964, the ADEA, and the FCRA (Counts 3 and 4).

### C. Retaliation (Count 5)

To establish a prima facie claim for retaliatory discharge, a plaintiff must establish that (1) she engaged in a statutorily protected activity, (2) she suffered a materially adverse action, and (3) there was a causal connection between the exercising of a statutorily protected activity and the materially adverse action. *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1277 (11th Cir. 2008). Statutorily protected activity, for purposes of Title VII and the FCRA, includes lodging internal complaints of harassment to supervisors. *Pipkins v. City of Temple Terrace*, 267

F.3d 1197, 1201 (11th Cir. 2001). A materially adverse action is any action by an employer that might dissuade a reasonable employee from making or supporting a charge of discrimination. *See Burlington Northern & Santa Fe Railroad Company v. White*, 548 U.S. 53, 68 (2006). To prove that an adverse action was taken, a plaintiff must show more than mere trivial harm. *Id.* A plaintiff's decision to report discriminatory behavior cannot immunize her from "petty slights, minor annoyances, and simple lack of good manners" that often take place at work and that all employees experience. *Id*. Furthermore, a plaintiff's subjective view of the materiality and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed objectively by a reasonable person under the circumstances. *Id*. To demonstrate a causal relationship, a plaintiff must show that the protected activity and the materially adverse action were temporally related. *Davis v. Coca-Cola Bottling Co.*, 516 F.3d 955, 978 n.52 (11th Cir. 2008). To establish temporal relation, a plaintiff cannot merely show that the materially adverse action occurred sometime after the protected activity. Rather, a plaintiff must show that the events were "very close" in proximity. *Id.*; *Clark County School District v. Breeden*, 532 U.S. 268, 273 (2001).

In her Complaint, Ms. Franklin alleges that "[b]efore her constructive discharge, [she] complained and otherwise engaged in protected activity by objecting to one or more unlawful employment practices." (Dkt. No. 1 at 4.) Further, she states that she "was subjected to retaliation because of her protected activity and was thereby constructively discharged as a proximate result." (Dkt. No. 1 at 5.) Thus, Ms. Franklin claims that her complaints to management and human resources constituted statutorily protected activity and her constructive discharge constituted a materially adverse action. Therefore, Ms. Franklin's claim of retaliation

16

can only succeed if she could establish her claim of constructive discharge. However, having already found that Ms. Franklin has not met her burden in establishing that she was constructively discharged, the Court finds that Ms. Franklin's claim for retaliation (Count 5) fails as a matter of law and recommends that summary judgment be granted in favor of the School Board. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) ("The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." ).

## IV. CONCLUSION

Accordingly, and for the forgoing reasons, the Court **RECOMMENDS** that the School Board's Motion for Summary Judgment (Dkt. No. 19) be **GRANTED**.

**IT IS SO REPORTED** at Tampa, Florida on this 18th day of October, 2011.

_____
ANTHONY E. PORCELLI
United States Magistrate Judge

## NOTICE TO PARTIES

Failure to file and serve written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date it is served on the parties shall bar an aggrieved party from a *de novo* determination by the District Court of issues covered in the report, and shall bar the party from attacking on appeal factual findings in the report accepted or adopted on appeal by the District Court except upon grounds of plain error or manifest injustice.

28 U.S.C. § 636(b)(1)(C); Local Rule 6.02; *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir. 1982) (*en banc*).

Copies furnished to:

Hon. Steven D. Merryday

Counsel of Record